IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH LEE FORD, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-23-62-RAW-GLJ |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Deborah Lee Ford requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age,

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi as the Defendant in this action.

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was sixty-two years old at the time of the administrative hearing. (Tr. 38). She obtained Bachelor's and Master's degrees, and has previously worked as a special education teacher, substitute teacher, elementary teacher, and assistant office manager. (Tr. 27, 247). Claimant alleges inability to work since an April 28, 2020, due to knee osteoarthritis, degenerative disc disease, spinal stenosis, asthma, hyperlipidemia, type II diabetes, anxiety disorder, and GERD. (Tr. 246d).

### Procedural History

Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on October 16, 2020. Her application was denied. ALJ John M. Dowling conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated August 24, 2022. (Tr. 18-28). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. At step two, he found Claimant had the severe impairments of left knee degenerative joint disease, asthma, obesity, and cervical degenerative disc disease, as well as the nonsevere impairments of right ankle calcification, hand numbness, major depressive disorder and

anxiety disorder. (Tr. 21). As part of the Psychiatric Review Technique ("PRT") at steps two and three, the ALJ found Claimant had a mild limitation in the functional area of interacting with others, but that she had no limitation in the three remaining functional areas of understanding, remembering, or applying information; concentration, persistence, or pace; and adapting or managing oneself. (Tr. 21-22). At step three, he found Claimant did not meet a Listing. (Tr. 22). He found at step four that Claimant could perform light work as defined in 20 C.F.R. §§ 404.1567(b), but she could only frequently handle and finger bilaterally; only occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs; and never climb ladders/ropes/scaffolds. Additionally, he found she must avoid frequent exposure to non-weather-related cold temperatures, as well as frequent exposure to vibration (such as shaking objects or surfaces) and frequent exposure to irritants (such as fumes, odors, dust, gasses, and poorly ventilated areas). (Tr. 23). The ALJ then concluded at step four that Claimant could return to her past relevant work as a special education teacher, substitute teacher, elementary teacher, and assistant office manager. (Tr. 27-28).

## Review

The claimant's sole contention of error is that the ALJ failed to include RFC limitations related to her mild impairment in her ability to interact with others. The undersigned Magistrate Judge finds this argument unpersuasive, and recommends the case be affirmed.

At least as far back as 2017, the evidence in the record as to Claimant's mental impairments reflect she was treated for anxiety that was stable on medication. (Tr., *e.g.*, 353, 647, 668, 693, 736, 848, 880, 892). This also continued after the April 28, 2020

alleged onset date, where records sometimes refer to depression and sometimes to anxiety, but she was always considered stable with the same medication for treatment. (Tr. 421, 601, 632, 1037).

On August 13, 2021, Claimant was referred for outpatient mental health treatment to discuss her anxiety and life stressors. (Tr. 906). The counselor assessed her with an adjustment disorder, and the treatment plan involved learning a "new grounding technique" for when she is overwhelmed. (Tr. 907). On September 14, 2021, Claimant reported no anxiety or depression. (Tr. 917). On May 25, 2022, Claimant had a negative depression screen. (Tr. 1156).

On June 18, 2021, Kaycie Pella, Ph.D., conducted a consultative mental examination of Claimant. (Tr. 511-514). She assessed Claimant with major depressive disorder, moderate-severe, recurrent, as well as unspecified anxiety disorder. (Tr. 513). Under "Prognosis," Dr. Pella indicated that Claimant's prognosis was guarded "due to ongoing emotional issues and pain issues"; however, she further indicated that Claimant had no impairment in relation to work-related mental activities including remembering information and maintaining sustained concentration and understanding instructions, but that her ability to interact socially and adapt appeared to be moderately impaired. (Tr. 513).

State reviewing physicians found initially and upon review that Claimant had mild limitations in all four of the functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.

In light of these findings, both concluded that Claimant did not have a severe mental impairment. (Tr. 70, 104).

In his written opinion at step two, the ALJ noted Claimant's severe and non-severe physical impairments, then turned to her mental impairments. He found her major depressive disorder and anxiety disorder, considered both singly and in combination, caused no more than minimal limitations in her ability to work and were therefore non-severe. (Tr. 21). He then turned to the four broad functional areas of mental functioning, as discussed above, finding she had only a mild limitation in one area: interacting with others. (Tr. 21). At step four, the ALJ focused largely on the evidence related to her severe physical impairments, but noted that the state reviewing physician opinions were persuasive in finding she had no severe mental impairment because they pointed out there was a lack of treatment and negative findings. (Tr. 26-247). Noting also that Claimant scored a perfect score on her cognitive exam administered by Dr. Pella, the ALJ found this was contrary to her alleged memory issues. Acknowledging Dr. Pella propounded a moderate limitation related to interacting and adapting, the ALJ found it was not supported by Dr. Pella's exam nor was it consistent with the evidence, particularly noting she had not engaged in mental health-specific treatment. (Tr. 27). The ALJ ultimately concluded that Claimant was not disabled because she could return to any of her past relevant work (Tr. 27-28).

Claimant contends that the mild limitation in interacting with others somehow requires the ALJ to include corollary nonexertional impairments in her RFC. Claimant cites to *Wells v. Colvin*, which states, "[A] conclusion that the claimant's mental

impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five. In his RFC assessment, the ALJ must consider the combined effect of *all* medically determinable impairments, whether severe or not." 727 F.3d 1061, 1068-1069 (10th Cir. 2013). Indeed, an ALJ is required to consider the effect of all impairments, both severe and non-severe, and account for them in formulating the claimant's RFC *at step four*. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. However, the Tenth Circuit clarified that "[*Wells*] does not hold that step three and step four findings must be the same." *Bales v. Colvin*, 576 Fed. Appx. 792, 798 n.3 (10th Cir. 2014); *see also* Soc. Sec. Rul. 96-8P, 1996 WL 374184, at *4 (July 2, 1996) ("The limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

  Here, Claimant appears to assert that the ALJ failed to conduct the more detailed analysis required at step four *because* he did not adopt any mental limitations as part of the RFC. But not even the numerous cases cited by Plaintiff support this proposition. The standard requires the ALJ to explain at step four why even mild limitations are not reflected in an RFC, which he did. And Claimant points to no evidence the ALJ missed or failed to account for. *See* Tr. 26-27. "[T]he ALJ need not accommodate mild mental limitations . . . where the ALJ properly discredits allegations of mental impairments and cites to

contrary evidence[.]" *Thomas D. v. Kijakazi*, 605 F. Supp. 3d 1063, 1068 (N.D. Ill. 2022) (internal quotation omitted); *see also Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."); *Johnson v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4476796, at *4 (E.D. Okla. Aug. 25, 2022), *report and recommendation adopted sub nom. Johnson v. Kijakazi*, 2022 WL 4467675 (E.D. Okla. Sept. 26, 2022) ("Even if an ALJ finds mild limitations from mental impairments, that does not mandate that she include mental limitations in the RFC.").

Finally, Claimant contends this error continued when the ALJ found she could return to all of her past relevant work because each job was work involving significant interaction with others. But as discussed above, the undersigned Magistrate Judge finds that substantial evidence supports the ALJ's determination that Claimant can perform the above-listed RFC. The final contention is therefore without merit. Essentially, Claimant asks the Court to reweigh the evidence in her favor, which the Court cannot do. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (citing *Casias*, 933 F.3d at 800).

The ALJ carefully assessed the lengthy medical record in this case, gave reasons for his RFC determination, and ultimately found that Claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific,

affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ.") (internal citations omitted). The essence of Claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the undersigned Magistrate Judge simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were applied by the ALJ and the decision of the Commissioner is therefore supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be AFFIRMED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

**DATED** this 12th day of February 2024.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**